IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOEL I. SHER, CHAPTER 11
TRUSTEE FOR TMST HOME
LOANS, INC.,

    *Plaintiff*,

    *and Crossclaim Plaintiff*,

    v.

LUXURY MORTGAGE CORP.,

    *Defendant*

    *and Third-Party Plaintiff,*

    and

COMMONWEALTH LAND TITLE
INSURANCE CO.,

    *Third-Party Defendant*

    *and Crossclaim Defendant.*

Civil Action No. ELH-11-3656

**MEMORANDUM OPINION**

This case is rooted in a fraudulent mortgage transaction in connection with a property located in Water Mill, New York (the "Property"). In early 2008, Luxury Mortgage Corporation ("Luxury"), defendant and third-party plaintiff, extended a $2 million loan to the borrower, secured by a mortgage (the "Mortgage") that was to have first priority on the Property. Intracoastal Abstract Co., Inc. ("Intracoastal") issued a title insurance policy to Luxury, underwritten by Commonwealth Land Title Insurance Company ("Commonwealth"), third-party defendant and crossclaim defendant. Shortly thereafter, Luxury assigned all of its rights, title and interest in the Mortgage to Thornburgh Mortgage Home Loans, Inc. ("TMHL"). The parties

subsequently discovered that the Property was in foreclosure because preexisting liens on the Property had not been satisfied, and the funds provided by Luxury had been misappropriated.

On May 1, 2009, TMST Home Loans, Inc. ("TMST"), formerly TMHL, filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  On November 24, 2010, in the bankruptcy proceeding,[1] the court-appointed Trustee for TMST, plaintiff and crossclaim plaintiff Joel I. Sher (the "Trustee"), initiated an adversary proceeding (Complaint for Damages, Indemnification and Specific Performance) (the "Complaint") against Luxury, arising out of the sale of the Mortgage from Luxury to TMHL.  *See* Compl. (ECF 4).  The Trustee subsequently filed an Amended Complaint on November 29, 2011.  *See* Am. Compl. (ECF 63).  Luxury filed an Answer to the Trustee's Amended Complaint as well as a Third-Party Complaint against Commonwealth (the "Third-Party Complaint") (ECF 65).  After this Court entered an Order withdrawing the reference of the adversary proceeding on January 9, 2012 (ECF 3), the Trustee filed a Crossclaim against Commonwealth (ECF 68).[2]

On March 15, 2012, Commonwealth filed a Motion to Dismiss the Trustee's Crossclaim for failure to state a claim ("Motion to Dismiss the Crossclaim") (ECF 89), accompanied by a supporting Memorandum of Law ("Memo I") (ECF 89-5) and the Declaration of Arthur G.

---

[1] The dates of the filings made in the Bankruptcy Court are indicated on the docket report for that proceeding, *see* Docket Report, U.S. Bankr. Ct., D. Md., Adversary Proceeding # 10:00898 (ECF 1-4), but not reflected by the "filing date" of January 9, 2012, as listed on this Court's docket.  Instead, this Court's docket reflects the date that the adversarial proceeding was withdrawn from the Bankruptcy Court.

[2] Although the Trustee denominates the filing as a "Crossclaim," the claim does not technically appear to be a crossclaim.  Fed. R. Civ. P. 13(g) provides that "[a] pleading may state as a crossclaim any claim by one party against a coparty."  But, Commonwealth is not a coparty of the Trustee.  Fed. R. Civ. P. 14(a)(3) addresses claims asserted by plaintiff against a third-party defendant, which suggests that the Trustee has asserted a "claim" under Rule 14(a).  Nevertheless, the label used by the parties is not material to resolution of the issues.

Jakoby, Esq. ("Jakoby Decl. I") (ECF 89-2).  On the same day, Commonwealth filed a Motion to

Dismiss Luxury's Third-Party Complaint for failure to state a claim ("Motion to Dismiss the

Third-Party Complaint") (ECF 90), accompanied by a supporting Memorandum of Law ("Memo

II") (ECF 90-5) and a second Declaration of Arthur G. Jakoby, Esq. ("Jakoby Decl. II") (ECF

90-1).  The Trustee filed a Response in Opposition to the Motion to Dismiss the Crossclaim (the

"Trustee's Opposition") (ECF 94), and Luxury filed a Response in Opposition to the Motion to

Dismiss the Third-Party Complaint ("Luxury Opposition") (ECF 99).[3]  The motions to dismiss

are now ripe for decision, and no hearing is necessary to resolve them.  *See* Local Rule 105.6.

For the reasons that follow, I will deny both motions.

## Factual Background[4]

On January 31, 2008, Luxury closed on a $2 million loan secured by a mortgage on real

property located at 982 Noyac Path, Water Mill, New York (the "Property").  Third-Party

Compl. ¶ 7.  Prior to closing, Luxury obtained a title report showing two prior mortgages on the

Property.  *Id.* ¶ 8.  In response to Luxury's request for assurance that the two mortgages had been

satisfied, Ethan Ellner, a title closer from Intracoastal, faxed a copy of the title report to Luxury

with handwritten notes indicating that the two prior mortgages had been satisfied.  *Id.* ¶¶ 9-10.

By correspondence of January 31, 2008, Commonwealth, the title insurer for the

Property, confirmed the following in response to Luxury's inquiry:

_____

[3] The Court has also considered Commonwealth's Reply in support of its Motion to
Dismiss the Crossclaim ("Reply I") (ECF 101), along with a Reply Declaration of Arthur G.
Jakoby, Esq. ("Reply Jakoby Decl. I") (ECF 101-1), and its Reply in support of its Motion to
Dismiss the Third-Party Complaint ("Reply II") (ECF 102), along with a second Reply
Declaration of Arthur G. Jakoby, Esq. ("Reply Jakoby Decl. II") (ECF 102-1).

[4] The facts are derived from the allegations set forth in the pleadings, which are assumed
to be true for the purposes of considering a motion to dismiss.  *E.I. du Pont de Nemours & Co. v.
Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

> Please be advised that Intracoastal Abstract Co., Inc. is a duly authorized Title
> Insurance agent of Commonwealth Land Title Insurance Company.  As such
> agent, said company can act fully in our stead and has complete authority to issue
> Certificates and Reports of Title; omit objections to title; collect and charge
> premiums and fees and to issue Policies of Title Insurance and Endorsements
> thereto, on behalf of Commonwealth Land Title Insurance Company.

*Id.* ¶ 14.

On the date of the closing (January 31, 2008), Luxury obtained a title insurance policy for the Property from Commonwealth, in the amount of $2 million (the "Title Policy"), insuring its mortgage as a first priority lien on the Property.  *Id.* ¶¶ 13, 15-16.  On February 1, 2008, having received the marked-up title report confirming that the two outstanding mortgages had been satisfied and released, Luxury funded the Mortgage.  *Id.* ¶¶ 18-20.

On February 25, 2008, Luxury sold the Mortgage to TMHL for $2,024,285.60, inclusive of interest and fees.  Am. Compl. ¶ 14.  The sale was governed by a Correspondent Loan Purchase Agreement and a TMHL Correspondent Seller's Guide[5] that represented and warranted that, *inter alia*, Luxury held a first priority lien against the Property.  *Id.* ¶¶ 7, 11.  The Correspondent Agreement further provided that the Mortgage was covered by title insurance that "insured [Luxury], its successors and assigns, as to the first priority lien of the Mortgage . . . ." *Id.* ¶ 11.

After TMST filed for bankruptcy, the Trustee discovered that a prior mortgage issued to E*Trade Bank had not been satisfied and retained first priority on the Property, and that E*Trade had initiated a foreclosure action.  Crossclaim ¶ 19.  The parties allege that the prior mortgage had been intentionally omitted from the title report provided by Intracoastal to Luxury before

---

[5] The Correspondent Loan Purchase Agreement and Correspondent Seller's Guide, in various iterations, governed the sale of mortgage loans from Luxury to TMHL since around 2001.  *Id.* ¶¶ 6, 8.

funding the Mortgage, in connection with mortgage fraud perpetrated by Ellner, who served as the title closer, and others. *Id.* ¶¶ 11, 14.

Upon learning of the fraud, the Trustee notified Commonwealth of the defect in title, and demanded that Luxury repurchase the Mortgage. *Id.* ¶¶ 17-18. When Luxury refused, the Trustee filed the Complaint, alleging claims for breach of contract against Luxury and seeking money damages, indemnification, and/or specific performance of the Correspondent Loan Purchase Agreement's buy-back provision. *Id.* ¶ 18. The Trustee subsequently requested that Commonwealth tender a defense to preserve TMST's interest in the E*Trade foreclosure proceeding. *Id.* ¶ 20. On October 13, 2011, E*Trade obtained a Judgment of Foreclosure & Sale on the Property. *Id.* ¶¶ 22-23. As a result, the Trustee submitted a request for coverage for its loss stemming from the foreclosure. *Id.* On November 23, 2011, Commonwealth denied coverage on the grounds that Luxury had not fully funded the loan and disclaimed any involvement in or responsibility for the alleged fraud. *Id.* ¶ 24.

The District Attorney's Office in Suffolk County, New York, indicted several individuals, including Ellner and Dustin Dente, Luxury's settlement agent, for fraud in connection with the Mortgage. *See* Am. Compl. ¶ 15; Jakoby Decl. I, Exh. 3 ("Dente Plea") (ECF 89-4), at 40:21-46:8. These individuals admitted to using a "straw buyer" to procure the Mortgage, to intentionally concealing the two outstanding mortgages on the Property, and to misappropriating the funds disbursed by Luxury at closing. Am. Compl. ¶ 15; Dente Plea at 40:21-46:8.

**Standard of Review**

*A.  Motion to Dismiss*

A defendant may test the adequacy of a complaint by way of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008); *see Aschroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see, e.g.*, *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (applying *Twombly* plausibility standard).

Whether a complaint adequately states a claim for relief is judged by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  *See Twombly*, 550 U.S. at 554-55.  Rule 8(a)(2) provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Although a plaintiff need not include "detailed factual allegations," the rule demands more than bald accusations or mere speculation.  *Twombly*, 550 U.S. at 555. To satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely."  *Id.* at 556 (brackets in original) (internal quotation marks omitted).  A complaint that provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," is insufficient.  *Id.* at 555.

When deciding a motion to dismiss pursuant to Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and "draw all reasonable

inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted).  However, the court is not required to accept legal conclusions drawn from the facts.  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe v. City of Charlottesville, Va.*, 579 F.3d 380, 385-86 (4th Cir. 2009).  And, if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that "the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (citation omitted).

### B.  Consideration of Extrinsic Materials on a Motion to Dismiss

The sole purpose of a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is to "test[] the sufficiency of the complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).  It follows that, as a general rule, a motion to dismiss submitted under Fed. R. Civ. P. 12(b)(6) is evaluated by reference to the complaint and exhibits that are attached or incorporated, but without regard to extrinsic evidence.[6]  *See E.I. du Pont*, 637 F.3d at 448.  Under the Federal Rules, consideration of extrinsic materials converts a motion to dismiss to a motion for summary judgment, and requires that a district court offer all parties a "reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d); *E.I. du Pont*, 637 F.3d at 448-49.

Both of Commonwealth's motions rely on material extrinsic to the Trustee's Crossclaim and Luxury's Third-Party Complaint: a plea hearing transcript from the guilty plea of Dustin

---

[6] This is in contrast to a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), for which a court may look beyond the jurisdictional allegations of the complaint.  *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

Dente, Luxury's settlement agent in connection with the Property, which took place on March 10, 2010, in a New York State court located in Suffolk County, New York, *see* Dente Plea, along with the Jakoby Declarations and other various attached exhibits.  During the plea hearing, Dente admitted that he conspired with Ellner and others in constructing a "stacked mortgage" scheme involving a straw buyer for the Property, and, along with Ellner, misappropriated the mortgage funds.  *See id.* at 40:21-46:8.  In reliance on Dente's admissions, Commonwealth contends in both motions that, *inter alia*, the Mortgage was never funded, rendering the Title Policy unenforceable on various grounds, and that Dente's participation in and knowledge of the fraud may be attributed to Luxury, thereby precluding Luxury's claims.

The Trustee and Luxury respond that the Dente Plea may not be considered at this juncture because it constitutes extrinsic evidence.  I agree.  Although the limitation on extrinsic materials may be relaxed in two circumstances, neither exception justifies looking beyond the pleadings here.

First, the Fourth Circuit has instructed that, "when a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'"  *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (alterations in original) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 606, 618 (4th Cir. 1999)); *see also Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (observing that a court may properly consider documents "attached to the complaint, as well those attached to the motion to dismiss, so long as they are integral to the complaint and authentic" (citations omitted)); *Gasner v. Cnty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995) ("[W]hen a

plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss the complaint and the Court may consider the same without converting the motion to one for summary judgment.").

This exception is justified on the ground that "the primary problem raised by looking to documents outside the complaint – lack of notice to the plaintiff – is dissipated [w]here plaintiff has actual notice . . . and has relied upon these documents in framing the complaint." *Am. Chiropractic*, 367 F.3d at 234 (alterations in original) (internal quotation marks omitted) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)); *see Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156-57 (2d Cir. 2006) (noting that conversion "expressly addresses and solves the major problem that arises when a court considers matters extraneous to the complaint, namely, lack of notice to the plaintiff"). But, "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document," or regarding the document's relevance. *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (citing *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) & *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001)).

With regard to the reliance exception, the question is whether the Trustee or Luxury "*rel[ied]* on the terms and effect of [the Dente Plea] in drafting the [pleadings]." *Global Network*, 458 F.3d at 156 (emphasis in original) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)). In *American Chiropractic*, for example, the court considered a document extrinsic to the complaint, which the defendant attached to its motion to dismiss, because the plaintiff "explicitly referred" to and based its fraud claims on "the alleged

misrepresentation made in that document."  367 F.3d at 234.  Likewise, in *Phillips*, the court could consider a newspaper article that, although the plaintiffs had not attached to their complaint, "was integral to and explicitly relied on in the complaint," and for which authenticity was not challenged.  190 F.3d at 618.

In this case, neither the Trustee's Crossclaim nor Luxury's Third-Party Complaint expressly relies on the mortgage fraud conspiracy as a basis for the claims against Commonwealth.  In other words, those claims do not, by their own terms, stand or fall on the existence of that conspiracy or the pleas entered by the individuals involved.  However, the Crossclaim does explicitly reference the fraud involving the Mortgage, the title-closer (Ellner), and the guilty pleas entered by "several of the individuals involved."  *See* Crossclaim ¶ 14.[7] And, more important, in the Amended Complaint, the Trustee avers:

> Loan No. 0023007008 [the Mortgage] was a fraudulent loan made in connection with a broader conspiracy involving a scheme using straw buyers, mortgage stacking and title washing to obtain loan funds to purchase real property. *Specifically, two individuals were indicted by the District Attorney's Office in Suffolk County, New York in connection with the fraud surrounding the closing of Luxury's origination of Loan No. 0023007008.  In plea agreements, these defendants admitted, among other things, that they conspired with other defendants to use the borrower as a "straw buyer" to procure Loan No. 0023007008 and to intentionally conceal two outstanding mortgages that were in foreclosure against the real property securing Loan No. 0023007008.  The defendants also admitted to misappropriating the $2,000,000 in funds disbursed by Luxury at the closing so that Luxury did not acquire a valid first lien.*

---

[7] Paragraph 14 of the Crossclaim avers: "After funding, however, Intracoastal, in collusion with the title closer and several co-conspirators stole the Loan proceeds without satisfying the prior mortgage, thus leaving a pre-existing lien in place.  Several of the individuals involved in a conspiracy involving straw-buyers, mortgage stacking and title washing were indicted for their conduct and pleaded guilty to defrauding Luxury, among others, in connection with the Loan, the closing upon the Loan and the theft of the Loan proceeds."

*See* Am. Compl. ¶ 15 (emphasis added).   Based on this allegation, Commonwealth argues that the Trustee and Luxury had notice of the content of the Dente Plea.

Nevertheless, the references to the fraud perpetrated by Dente and Ellner in the pleadings do not automatically "open the door" to consideration of the Dente plea hearing.   In *Global Network*, 458 F.3d at 156-57, for example, the Second Circuit found that a complaint's reference to guilty pleas in an unrelated criminal proceeding "cannot open the door to the content of [the] testimony" because "the nexus between the two is too attenuated to render that testimony integral to the complaint."   The Second Circuit determined in *Global Network* that the district court erred in relying on such a guilty plea for purposes of a motion to dismiss, in a similar procedural posture, and violated the conversion rule as a result.   *Id.* at 156-57.

Moreover, "not every document referred to in a complaint may be considered incorporated by reference and thus introduced by the moving party in support of a motion to dismiss." *Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1015 (1st Cir. 1988) (citing *Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir. 1985)).   In this instance, like in *Global Network*, and unlike in *American Chiropractic* or *Phillips*, the Dente Plea does not form the basis of the claims alleged by either Luxury or the Trustee.   It was entered in a criminal proceeding, in a New York State court, which did not involve these parties.   Therefore, I do not find that tangential references in the pleadings sufficient to establish "reliance" on the Dente Plea by either the Trustee or Luxury.[8]

---

[8] In passing, Commonwealth insists that the Trustee cannot rely on Ellner's guilty plea while simultaneously disclaiming reliance on the Dente Plea.  *See* Reply I at 7-8.  Even accepting Commonwealth's characterization of the pleadings as "relying" on Ellner's plea, however, reliance on the Dente Plea cannot be presumed *a fortiori*.  The fact that Ellner intentionally misrepresented that prior mortgages on the Property had been satisfied can be ascertained

Furthermore, it is evident that there are factual disputes arising from the content of the Dente Plea and its use by Commonwealth. Whereas Commonwealth interprets the content of the Dente Plea as proving that the Mortgage *was not* funded, both Luxury and the Trustee have alleged facts suggesting that the Mortgage *was* funded. Moreover, the pleadings refer to a HUD-1 Settlement Statement that, taking all reasonable inferences in favor of the complaining party, could show that the Mortgage was funded.[9]   *See* Trustee's Opp., Declaration of Richard M. Goldberg, Exh. A (ECF 94-2). Thus, to the extent that the substance of the Dente Plea is concerned, it conflicts with the allegations of the Trustee and Luxury. And, of import here, disputed issues of material fact should *not* be resolved at the motion to dismiss stage. *See, e.g.*, *Global Network*, 458 F.3d at 154-56 ("The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits. The Rule thus assesses the legal feasibility of the complaint, but does not weigh the evidence that might be offered to support it."). Rather, at this juncture, I must "accept as true all of the factual allegations contained in the complaint," and "draw all reasonable inferences [from those facts] in favor of the [complaining party]." *E.I. du Pont*, 637 F.3d at 440. In my view, it would be particularly inappropriate to consider the content of the Dente Plea, given the arguments advanced by Commonwealth.

---

independently of and is a separate matter from the Dente Plea, and, as discussed above, *reliance* on an extrinsic document, not notice of or reference to a document, is the governing standard. *See Global Network*, 458 F.3d at 156-57.

[9] Commonwealth doubts the import of the HUD-1 statement in light of the Dente Plea. But, disregarding the Dente Plea and taking all reasonable inferences in favor of the complaining parties, I cannot reach the same conclusion. Moreover, the HUD-1 statement was expressly relied upon in the Crossclaim, *see* Crossclaim ¶ 15 (relying on HUD-1 statement to show payment by Luxury to Intracoastal for "Lender's coverage"), rendering it integral to the pleadings.

This conclusion does not resolve the issue, however, because, under a second exception, facts and documents subject to judicial notice may also be considered by a court, without converting the motion under Fed. R. Civ. P. 12(d). *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011). Matters of public record, such as state court filings, may be judicially noticed, and therefore considered under this exception. *See, e.g.*, *Waugh Chapel S., LLC v. United Food & Commercial Workers Union Local 27*, 855 F. Supp. 2d 476, 486 (D. Md. 2012); *Haley v. Corcoran*, 659 F. Supp. 2d 714, 721 n.4 (D. Md. 2009) (considering fact that plaintiffs had filed exceptions to foreclosure sale in state proceeding). According to Commonwealth, the Dente Plea may be considered as a document subject to judicial notice.

Judicial notice is insufficient in this instance. To be sure, the Fourth Circuit has held that a court may take judicial notice of the fact of a guilty plea. *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1241 (4th Cir. 1989). Yet, "courts routinely take judicial notice of documents filed in other courts, . . . not for the truth of the matters asserted . . . , but rather to establish the fact of such litigation and related filings." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991). Put another way, judicial notice of the *fact* of a plea is far from judicial notice of its *contents*. *See, e.g.*, *Global Network*, 458 F.3d at 156-57 (declining to take judicial notice of content of testimony on motion to dismiss, even though existence of testimony could be judicially noticed). Thus, it is understood that "[a] criminal conviction is not conclusive of the facts behind it in a subsequent civil proceeding, and, indeed, the conviction is ordinarily not even admissible in the civil action as evidence of the underlying facts." *Eagan v. Calhoun*, 347 Md. 72, 86, 698 A.2d 1097, 1104 (1997) (holding that, generally, facts underlying defendant's guilty

plea in criminal case are "not conclusive" in a related civil case and are "subject to rebuttal"); *see Taboh v. Times Mirror Co.*, 81 F. App'x 916, 917 (9th Cir. 2003) (holding that district court erred in considering plaintiff's prior guilty plea and putting conclusive weight on admissions in plea agreement, and that such consideration converted motion to dismiss to motion for summary judgment). And, in light of the factual disputes discussed above, it is hardly appropriate to take judicial notice of the substance of the Dente Plea. *See* Fed. R. Evid. 201(b)(2) (allowing judicial notice of facts "not subject to reasonable dispute"); *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) ("Facts adjudicated in a prior case do not meet either test of indisputability contained in Rule 201(b): they are not usually common knowledge, nor are they derived from an unimpeachable source.").

In view of the foregoing, I have serious reservations in considering the guilty plea at this juncture. The Dente plea hearing is "extrinsic" in the sense that it was not formally attached to the Crossclaim or Third-Party Complaint, it does not form the basis of the claims brought against Commonwealth, and it is contradicted by the facts averred in the pleadings. Therefore, in analyzing the motions to dismiss, I decline to consider the content of the Dente Plea.

## Discussion

### I.   Motion to Dismiss the Crossclaim

In the Crossclaim, the Trustee asserts a claim for breach of contract, alleging that Commonwealth breached its obligations under the Title Policy by refusing to cover losses suffered by TMST as a result of its lack of a first priority lien on the Property. *See* Crossclaim ¶¶ 31-39. In its Motion to Dismiss the Crossclaim, Commonwealth essentially contends that the mortgage was fraudulent, and therefore void *ab initio*, rendering the Title Policy invalid and

unenforceable under New York law.[10]  *See* Memo I at 2.  Further, Commonwealth suggests that the terms of the Title Policy preclude the Trustee's claim for breach of contract, because the Mortgage was never funded.  *Id.* at 2-3.  Having excluded consideration of the Dente Plea, I am not persuaded.

A title insurance policy "is a contract by which the title insurer agrees to indemnify its insured for loss occasioned by a defect in title."  *L. Smirlock Realty Corp. v Title Guar. Co.*, 418 N.E.2d 650, 653 (N.Y. 1981).  "It represents the insurer's opinion that the title is valid, 'backed by an agreement to make that opinion good, in case it should prove to be mistaken, and loss should result in consequence to the insured.'"  *Eliopoulos v. Nation's Title Ins. of N.Y., Inc.*, 912 F. Supp. 28, 30 (N.D.N.Y. 1996) (quoting *First Nat'l Bank & Trust Co. v. N.Y. Title Ins. Co.*, 12 N.Y.S.2d 703, 710 (Sup. Ct. 1939)).  As such, title insurance generally extends to "loss by reason of defective titles and encumbrances thereon and insur[es] the correctness of searches for all instruments, liens or charges affecting the title to such property."  *Smirlock*, 418 N.E.2d 653 (citation omitted).

Noting that "title insurance insures against loss regarding title to the land," but not "the underlying debt," *Fidelity Nat'l Title Ins. Co. of N.Y. v. Consumer Home Mortg.*, 272 A.D.2d 512, 514 (N.Y. App. Div. 2000), Commonwealth attempts to recast the Trustee's claim as a loss due to an unfunded mortgage.  New York law certainly suggests that an insured cannot claim coverage under a title insurance policy where the loss arises from a failure to fund the loan.  *See Consumer Home*, 272 A.D.2d at 514 (finding title insurance policy did not cover

---

[10] The Title Policy's choice-of-law provision states that a court should apply the "law of the jurisdiction where the Land is located."  It is undisputed that the Property is located in New York, making New York law the relevant law for the purpose of the motions to dismiss.

misappropriation of mortgage funds); *Fidelity Nat'l Title Ins. Co. v. Cole Taylor Bank*, No. 11-cv-4497 (MGC), 2012 WL 2814001, at *5 (S.D.N.Y. July 10, 2012) (finding title policy unenforceable "because neither the borrowers nor the banks holding the prior mortgages received loan proceeds, there were no valid mortgages, and no title policies were issued"); *accord Gerrold v. Penn Title Ins. Co. v. Troika Affiliates, Inc.*, 637 A.2d 1293, 1295 (N.J. Super. Ct. App. Div. 1994) (finding failure of consideration due to insufficient funds not covered under title insurance policy).   Accordingly, Commonwealth asserts that the Title Policy is unenforceable, either because the underlying transaction failed to convey a valid deed, and in turn, a valid mortgage, *see Filowick v. Long*, 201 A.D.2d 893, 893 (N.Y. App. Div. 1994), or because the underlying mortgage was never funded.  *See Consumer Home*, 272 A.D.2d at 514.

In *Filowick v. Long*, 201 A.D. 2d 893, the defendant fraudulently signed a deed to her mother's residence on behalf of her mother, transferring title to the defendant, and used the property to secure two mortgages.  *Id.*  Because of the fraud, the court held that "the deed to the property was void *ab initio*."  *Id.*  Thus, the court reasoned that "[i]t was legally impossible" to for the defendant "to encumber the property," and the mortgage was consequently invalid.  *Id.*

In *Consumer Home*, 272 A.D. 2d 512, a mortgage lender entered into loan commitments with several prospective residential property buyers, intending to secure the loans with mortgages on the property.  *Id.* at 513.  Prior to closing, the buyers obtained title insurance policies "insuring the validity and enforceability of the lien of each proposed mortgage," and the loan funds were wired to an escrow account held by the settlement attorney.  *Id.*  But, the settlement attorney absconded with the loan money, and, after closing, the checks drawn on the escrow account were dishonored for insufficient funds.  *Id.* at 513-14.  As a result, the title

insurer refused to record the mortgages for lack of consideration. *Id.* at 514. The court held that the mortgage lender could not seek coverage under the title insurance policy because its loss had stemmed from loss concerning the underlying debt, not a defect in title. *Id.*

Unlike in *Filowick,* the Trustee does not allege that the mortgage was premised on an invalid deed. Nor, as in *Consumer Home*, does the Trustee seek coverage under the Title Policy for losses stemming from misappropriation of the mortgage funds. Rather, the Crossclaim alleges that, because of a fraudulent misrepresentation made by an employee of Commonwealth's agent, Intracoastal, the Trustee incurred a loss from a defect in title, depriving it of a first priority lien on the Property.[11]

The loss here appears to fall squarely within the purpose of title insurance, *see Smirlock*, 418 N.E.2d at 652, and is specifically covered under several provisions in the Title Policy. *See* Crossclaim ¶ 30 (insuring title against "any defect in or lien or encumbrance on the Title, including a defect in Title caused by a forgery or fraud"; "[t]he invalidity or unenforceability of the lien of the Insured Mortgage upon the Title, including impairment of the lien from forgery or fraud"; and "[t]he lack of the priority of the lien of the Insured Mortgage upon the Title over any other lien or encumbrance"). Commonwealth cannot use its own motion to transform the claim

---

[11] It is unclear at this juncture whether the loss was actually incurred. As an attachment to its Reply, Commonwealth has proffered an order from the Supreme Court of the State of New York, Suffolk County, granting the Trustee's motion to intervene in the E*Trade foreclosure proceeding, which suggests that the foreclosure proceeding is not final, at least as of January 31, 2012, the date the order was filed. *See* ECF 101-6. However, Commonwealth offered this document in its Reply, and failed to raise the argument in its initial Motion. Therefore, the argument is waived for the purposes of this motion. *See Marshall v. James B. Nutter & Co.*, 816 F. Supp. 2d 259, 264 (D. Md. 2011) ("This Court has previously held that '[t]he ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered.'" (quoting *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 735 (D. Md. 2006))).

made by the Trustee into a claim the Trustee simply has not made.  Nor can Commonwealth ignore the terms of the Title Policy.

I acknowledge that there are factual inconsistencies between the facts recounted in the Dente Plea and the Trustee's allegations.  The Trustee alleges in the Crossclaim that the Mortgage was "fully funded" by payment to the seller.  *See* Crossclaim ¶¶ 13-14; Trustee's Opp. at 14.  Yet, the Dente Plea and the Trustee's own Amended Complaint both indicate that, rather than using the $2 million to purchase title to the property, Dente simply gave it to Ellner, who subsequently misappropriated the money.  *See* Am. Compl. ¶ 14 ("The defendants also admitted to misappropriation of the $2,000,000 in funds disbursed by Luxury at the closing so that Luxury did not acquire a valid first lien."); Dente Plea at 43:3-44:9 ("[Ms. Stavrides, Ass't D. Att'y]: Did you use that money to satisfy the outstanding mortgages already on the property?  [Dente]: No. [Ms. Stavrides]: Who did you give the money to?  [Dente]: Ethan Ellner.").  Commonwealth therefore argues that the Trustee's averment that the mortgage was funded is contradicted by both the Trustee's own pleadings and the facts as established by the Dente Plea.[12]

To be sure, a court deciding a motion to dismiss is not obligated to accept as true allegations that are squarely contradicted by the record.  *See Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). But, as discussed above, the Dente Plea constitutes extrinsic material that would require

---

[12] Dente also testified at the plea hearing that the purported mortgage was, in reality, a "stacked mortgage" issued to a straw buyer, by which "a new first mortgage is taken on a property and where that mortgage lender has no knowledge that the prior first mortgage was not satisfied out of their proceeds, in fact, was even in foreclosure."  Dente Plea at 43:5-43:11. Courts have deemed a mortgage invalid, and the title policy unenforceable, where neither borrowers nor holders of prior mortgages received loan proceeds.  *See Cole Taylor*, 2012 WL 2814001 at *5.  But, absent consideration of the extrinsic evidence, I will not decide that issue of fact on the pleadings alone.

conversion of the motion to one for summary judgment, and, in any event, all factual inferences must be made in favor of the complaining party. *E.I. du Pont*, 637 F.3d at 440. In view of the foregoing, Commonwealth's arguments lack any concrete basis in the facts. The merits of these contentions must await additional factual development, and may be reasserted at summary judgment.

## II.   Motion to Dismiss the Third-Party Complaint

In its Third-Party Complaint, Luxury asserts claims for fraudulent and negligent misrepresentation concerning prior liens on the Property; negligence in the supervision and retention of its agent, Intracoastal, while, through Ellner, it allegedly defrauded Luxury; and indemnification for the Trustee's subsequent claims against Luxury, should Luxury be obligated to repurchase the Mortgage. *See* Third-Party Compl. ¶¶ 26-55.

In its Motion to Dismiss the Third-Party Complaint, Commonwealth argues that Luxury's fraud claim fails because Luxury's own agent participated in and had knowledge of the misrepresentations; the negligence claims are precluded by the Title Policy under New York law; and the claim for indemnification must be denied because Luxury is not an "insured" under the Title Policy and the claim is premised on future losses that have not yet occurred. *See* Memo II at 2-3. As with its Motion to Dismiss the Crossclaim, Commonwealth relies, in substantial part, on the Dente Plea.

### A.  *Fraudulent Misrepresentation*

A claim for fraudulent misrepresentation under New York law requires: (1) a material misrepresentation of fact by the defendant; (2) made with knowledge of its falsity; (3) intent to defraud; (4) reasonable reliance by the plaintiff upon such misrepresentation or omission; (5)

causing damage to the plaintiff. *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006). Here, Luxury seeks to hold Commonwealth liable for the misrepresentations or omissions made by Ellner, the rogue employee of its agent, Intracoastal.

Commonwealth first suggests that Dente's knowledge of the underlying mortgage fraud, as indicated by the Dente Plea, may be imputed to Luxury, thereby defeating the reliance element of a fraudulent misrepresentation claim.  It is well established that, "when an agent is employed to represent a principal with respect to a given matter and acquires knowledge material to that representation, for purposes of assessing the principal's rights and liabilities vis-à-vis a third person the agent's knowledge is imputed to the principal." *Veal v. Geraci*, 23 F.3d 722, 725 (2d Cir. 1994) (applying New York law).  Moreover, "[w]hen a financial institution directs a settlement agent to satisfy a pre-existing mortgage, the settlement agent's acts are 'properly imputed' to the financial institution." *Cole Taylor*, 2012 WL 2814001, at *4 (citing *Consumer Home*, 272 A.D.2d at 514).  And, under the doctrine of *in pari delicto*, a party's "participation in and imputed knowledge of the fraud" may defeat a claim for recovery.  *In re Parmalat Sec. Litig.*, 412 F. Supp. 2d 392, 400 (S.D.N.Y. 2006).  Thus, should Dente's knowledge be imputed to Luxury, Commonwealth argues, Luxury cannot establish reasonable reliance upon the alleged misrepresentations.

Based on the pleadings alone, however, I decline Commonwealth's invitation to determine whether Dente's knowledge may be imputed to Luxury.  *See Buckley v. Deloitte & Touche USA LLP*, No. 06 Civ. 3291 (SHS), 2007 WL 1491403, at *9 (S.D.N.Y. May 22, 2007) (denying motion to dismiss based on imputation of knowledge of fraud from agent to principal as inappropriate because determinations of specific facts were required).  Indeed, having excluded

the Dente Plea from consideration, there is simply no basis for Commonwealth to make this argument.

Furthermore, even assuming, *arguendo*, Dente's knowledge of the fraud based on the *fact* of his guilty plea, an agent's knowledge is not imputed to the principal where the agent "is engaged in a scheme to defraud his principal, either for his own benefit or that of a third person." *Benjamin Ctr. v. Hampton Affiliates, Inc.*, 488 N.E.2d 828, 829 (N.Y. 1985).   In such circumstances, "the presumption that knowledge held by the agent was disclosed to the principal fails because he cannot be presumed to have disclosed that which would expose and defeat his fraudulent purpose."  *Id.*   The facts, as alleged, along with the inferences drawn in favor of Luxury, suggest that Dente's actions were contrary to Luxury's interest.  *See In re Parmalat*, 412 F. Supp. 2d at 400-01.   Therefore, I cannot conclude that, as a matter of law, his knowledge should be imputed to Luxury.

In its Reply, Commonwealth also asserts that Luxury cannot use this adverse interest argument as both a sword and a shield, and therefore, just as Dente's knowledge should not be imputed to Luxury, Ellner's conduct should not be imputed to Commonwealth.[13]  Reply II at 8-9. But, this argument jumps the gun.  To survive a motion to dismiss, a complainant need only set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely."

---

[13]  Commonwealth's alternative argument that New York has frowned on "double imputation" of knowledge through two principal-agent relationships is inapposite.  *See* Memo II at 8, n.4.  The cases cited by Commonwealth address ethical conflicts in law firms, and are therefore wholly inapplicable to this case.  *See Laskey Bros. of W. Va., Inc. v. Warner Bros. Pictures, Inc.*, 224 F.2d 824 (2d Cir. 1955) (addressing disqualification of law firm); *Smith v. Whatcott*, 774 F.2d 1032 (10th Cir. 1985) (addressing disqualification of counsel); *Am. Can Co. v. Citrus Feed Co.*, 436 F.2d 1125 (5th Cir. 1971) (addressing disqualification of counsel).

*Twombly*, 550 U.S. at 556 (brackets in original) (internal quotation marks omitted).  And, I "must accept as true all of the factual allegations contained in the complaint," and "draw all reasonable inferences [from those facts] in favor of the plaintiff."  *E.I. du Pont*, 637 F.3d at 440 (citations omitted).

Here, the facts alleged in the Third-Party Complaint suggest that Ellner enjoyed actual or apparent authority to act on behalf of Commonwealth.  *See, e.g.*, *Bicounty Brokerage Corp. v. Burlington Ins. Co.*, 88 A.D.3d 833, 834-35 (N.Y. 2011) ("It is fundamental to the principal/agent relationship that an insurance company is liable to a third person for the wrongful or negligent acts and misrepresentations of its agent when made within the general or apparent scope of the agent's authority . . . ." (quotation omitted)).  As alleged in the Third-Party Complaint, Commonwealth represented to Luxury that Intracoastal "is a duly authorized Title Insurance agent" of Commonwealth, and "has complete authority to issue Certificates and Reports of Title; omit objections to title; . . . and to issue Policies of Title Insurance . . . on behalf of Commonwealth . . . ."  Third-Party Compl. ¶ 14.  And, actual authority possessed by a corporate agent may extend to the agent's employees or subagents.  *See Manley v. AmBase Corp.*, 121 F. Supp. 2d 758, 772 (S.D.N.Y. 2000) ("The authority of a corporation to appoint a subagent to perform the tasks of the agent may be inferred because '[o]ne employing a corporation as an agent necessarily knows that the corporation must act through agents and hence consents to the use of its employees as subagents.'" (quoting Restatement (Second) of Agency § 80(b) cmt. a)).  Consequently, the facts alleged establish a plausible claim for fraudulent misrepresentation against Commonwealth for Ellner's conduct.

At a later stage, and after discovery, the facts may bear out that Ellner and Intracoastal acted contrary to Commonwealth's interest.   But, at this juncture, taking all reasonable inferences in favor of Luxury, Luxury has alleged facts sufficient to suggest that Ellner acted as Commonwealth's agent in making the alleged misrepresentations.   Therefore, I will deny the motion to dismiss the Third-Party Complaint with regard to the claim of fraudulent misrepresentation.

### B.  *Negligent Misrepresentation and Negligent Supervision/Retention*

Luxury's second and third claims against Commonwealth are premised on two theories of negligence: Count II asserts a claim for negligent misrepresentation, and Count III asserts a claim for negligent supervision/retention.   Commonwealth does not dispute that the Third-Party Complaint alleges facts sufficient to establish the elements in support of either of these claims. Rather, Commonwealth argues that neither claim is viable because, in Commonwealth's words, "New York [c]ourts reject *any* claims asserting negligence in connection with the issuance of a title policy."  Memo II at 11 (emphasis in original).

A claim for negligent misrepresentation in New York requires a showing of: "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information."  *MatlinPatterson ATA Holdings LLC v. Fed. Express Corp.*, 87 A.D.3d 836, 840 (N.Y. App. Div. 2011) (quoting *JAO Acquisition Corp. v. Stavitski*, 863 N.E.2d 585 (2007)).  A claim for negligent supervision/retention requires: (1) an employment or agency relationship between the defendant and the tortfeasor; (2) defendant's prior knowledge or notice of the employee's or agent's propensity to commit the acts causing injury; and (3) committed on

the defendant's premises or with the defendant's chattels.  *See Bouchard v. New York Archdiocese*, 719 F. Supp. 2d 255, 261 (S.D.N.Y. 2010) (citing *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004)).

It is "well settled law" in New York "that a cause of action for negligence in searching title does not lie in an action on the policy."  *Citibank, N.A. v. Chicago Title Ins. Co.*, 214 A.D.3d 212, 216 (N.Y. App. Div. 1995) (citing *Trenton Potteries Co. v. Title Guarantee & Trust Co.*, 68 N.E. 132, 135 (1903)).  As New York courts have explained,

> The contract of insurance is distinct and separate from the contract of searching. . . .  Under the contract for searching titles the defendant may be liable for any damages which its negligence may have imposed upon the plaintiff.  Under the contract of insurance no question of negligence in searching can arise.

*Id.* (citing *Trenton*, 68 N.E. at 135).  This is because a title search is undertaken by the insurer, for its own benefit, to determine the scope of the coverage the insurer will offer or allow an opportunity to correct known defects.  *See id.* at 219; *Zev Cohen, LLC v. Fidelity Nat'l Title Ins. Co.*, 831 N.Y.S.2d 689, 694 (Sup. Ct. 2007).  "What the search does, depending upon the schedule of exceptions that survive the policy's issuance, is define the scope of coverage with respect to known defects."  *Citibank*, 214 A.D.3d at 216.  Consequently, mere reliance on a title search does not, "absent some other commitment from the insurer, render the search an independent representation as to title, which survives the delivery of the policy and gives rise to a cause of action in negligence or misrepresentation."  *Id.*

In *Citibank*, a mortgage lender sued its title insurance company on a theory of negligence for a defective title search.  *Id.*  Just as Luxury alleges here, the lender claimed that, in deciding to extend the loan, the lender had relied on a title report incorrectly showing that it would hold a first priority lien on the property.  *Id.*  The court held that the lender could not recover in

negligence for the insurer's failure to disclose the additional liens on the property, absent an additional duty.  *See id.*  at 217-19; *id.* at 220 ("[T]itle insurers have the power, but not the obligation, to issue either a guarantee or the correctness of a search or a title policy or both. Here, Chicago Title issued a title policy, not a guaranteed search.").

As in *Citibank*, Luxury's negligence claims arise from the insurer's alleged misrepresentations regarding defects in title.  Just as in *Citibank*, Luxury has not identified any independent duty, beyond Commonwealth's contractual obligation to provide insurance under the Title Policy, pertaining to the accuracy of a title search.  Furthermore, the Title Policy includes a merger provision limiting claims on Luxury's lien to the policy's provisions of coverage, thereby precluding any recovery for a negligent title search under the policy itself.  *See Citibank*, 214 A.D.2d at 221 (finding "undisputed that none of the[] conditions to Chicago Title's obligation to indemnify has occurred").

Nevertheless, as Luxury astutely observes, Commonwealth has disclaimed the validity of the title insurance policy while simultaneously relying upon it to disallow the claims in negligence.  *See* Luxury Opp. at 15.  At some point, a determination as to the validity of the Title Policy will presumably require dismissal of one set of claims or the other, because, at least at this point, it appears that the two cannot coexist.  Because the validity of the Title Policy has not yet been decided, however, it would be premature to find the negligence claims barred on such grounds.[14]  Therefore, I will deny the motion to dismiss with regard to Luxury's claims sounding in negligence.

---

[14] Although the facts in *Citibank* are analogous to the facts presented in this case, I am not convinced that the authority cited by Commonwealth precludes a claim for negligent

C.  *Damages and Indemnification*

Commonwealth contends that Luxury may not assert a claim for indemnification (or any other claims, for that matter) because the damages alleged by Luxury are, at this point in the proceedings, speculative, and therefore any determination on the claim would represent an advisory opinion.  *See* Memo II at 14-15.  As Commonwealth correctly notes, Luxury has not yet been deemed liable to the Trustee in the underlying adversarial proceeding, and therefore has not suffered any cognizable damages for which it may seek recovery.  *Id.* at 8-10.

The Federal Rules of Civil Procedure permit a party to implead "a nonparty who is *or may be liable* to it for all or part of the claim against it."  Fed. R. Civ. P. 14(a) (emphasis added).  "Rule 14 was designed to permit third-party defendants to be brought into the action so that the right of the original defendant and the third-party defendant could be established in the same trial."  *St. Paul Fire & Marine Ins. Co. v. United States Lines Co.*, 258 F.2d 374, 375 (2d Cir. 1958); *see also Am. Export Lines, Inc. v. Revel*, 262 F.2d 122, 124-25 (4th Cir. 1958) ("The purpose of third-party procedure is to prevent circuity of action by drawing into one proceeding all parties who may become ultimately liable, so that they may therein assert and have a determination of their various claims inter sese.  This is intended to save the time and cost of duplicating evidence and to obtain consistent results from identical or similar evidence, as well as to avoid the serious handicap of a time lag between a judgment against the original defendant and a judgment in his favor against the third-party defendant."); *Lehman v. Revolution Portfolio L.L.C.*, 166 F.3d 389, 394 (1st Cir. 1999) (same).

---

supervision/retention, insofar as that authority does not expressly discuss such a claim, but rather focuses on negligent misrepresentation.

Such is the case here.  The rights and liabilities of multiple parties must be determined simultaneously to avoid unnecessary and duplicative litigation.  The facts relevant to the Amended Complaint overlap substantially with the facts at issue in the Third-Party Complaint, and the parties' legal claims are equally intertwined.  Commonwealth has disputed "ripeness," based on Luxury's lack of damages.  *See Thomas v. JPMorgan Chase & Co.*, 811 F. Supp. 2d 781, 791 (S.D.N.Y. 2011) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.").  This contention is without merit.  F. R. Civ. P. 14, pertaining to third-party actions, contemplates that damages are only a potentiality.

Commonwealth also maintains that Luxury may not assert a claim for "indemnification" because, having sold the mortgage, Luxury is no longer an "insured" under the policy.  But, as Luxury indicates in its Third-Party Complaint, this claim is premised on a judicial determination that Luxury be required to repurchase the Mortgage.  *See* Third-Party Compl. ¶¶ 54-55.  As discussed above, third-party actions under Rule 14(a) cover circumstances such as this, and therefore, I decline to dismiss the claim at this time.  *See, e.g.*, *MetroPCS Wireless, Inc. v. Telecomms. Sys., Inc.*, Civ. No. WDQ-09-0601, 2009 WL 3418581, at *4 & n.4 (D. Md. Oct. 20, 2009) ("Although a claim for indemnification or contribution technically does not arise until the prime obligation to pay has been established . . . third-party actions [may] be commenced before they are technically ripe, so that all parties may establish their rights and liabilities in one action." (quoting 82 N.Y. Jur. 2d, Third–Party Practice, § 160)); *cf. Mars Assocs., Inc. v. N.Y. City Educ. Const. Fund*, 126 A.D.2d 178, 191-92 (N.Y. App. Div. 1987) (explaining that third-party actions for indemnity under New York law are an exception from ripeness requirement).

- 27 -

In a final foray, Commonwealth contends that coverage is specifically excluded by the policy under provisions governing "[d]efects, liens, [and] encumbrances" that are "created, suffered, assumed or agreed to by the Insured Claimant."  *See* Reply Jakoby Decl. II, Exh. 1 (exclusion 3(a)) (ECF 102-2).  But, this argument is wholly reliant on the Dente Plea, which, as discussed above, will not be considered by the Court as this time.  Moreover, it is asserted for the first time in Commonwealth's reply brief, and therefore will not be entertained by the Court.  *See Marshall v. James B. Nutter & Co.*, 816 F. Supp. 2d 259, 264 (D. Md. 2011).  Accordingly, I will deny Commonwealth's motion with regard to Luxury's claim for indemnification.

### Conclusion

For the foregoing reasons, the Court will deny Commonwealth's motions to dismiss.  A separate Order, consistent with this Opinion, follows.


Date: November 19, 2012                              _____/s/_____
                                                     Ellen Lipton Hollander
                                                     United States District Judge